jñott, J.,
delivered the opinion of the court:
This is an action brought to recover the net proceeds of eleven bales of sea-island cotton, captured at Charleston, of the value of $5,433.
This case was the first in which the question of ownership was clearly considered by the court. On the former trial it was thought that where a party in a beleaguered city bought cotton after its capture had become imminent, he should prove a loyal title, or should at least show, from the facts and circumstances of the purchase, that it was not made with a fraudulent intent to deprive the government of a right of capture. Subsequently’, á different rule was laid down by a majority of the court in the case of Pollard, (4 C. Cls. R., p. 328,) which more recently has been affirmed by the Supreme Court. The claimant, moreover, now produces evidence showing that he bought the cotton in good faith. Therefore, the point on which the case formerly turned is no longer a question to be considered.
On the former trial a majority of the judges were satisfied as to the claimant’s loyalty. The case now comes back upon precisely' the same evidéuce as to loyalty upon which that question was before presented. Since then, however, the case has been upon the general docket, and either party' has been at liberty to offer further testimony'. The fact found in the former trial no *631 longer remained when the former trial was set aside. The parties were not bound by it, and the court is equally free to reach a different result, though the testimony be identical. ■
This loyalty of the claimant is now strongly contested by the special counsel of the Treasury. So far as the legal aspect of the question is concerned, we are satisfied that from the time of the attack on Sumter to the end of the war, the claimant evaded military service, and consistently adhered to the United States. Before the attack, the testimony is not so clear. The claimant was a member of many years’ standing in a militia company, called the Irish Yolunteers. The company was called out one evening and sent to Morris Island. The claimant went with it. He left there within a few days, and was in Charleston at the time of the bombardment. When the Irish Yolunteers went into the Confederate service, he withdrew. As he then said, he “was sorry for it, but could not think of serving in the corps, now that it was called to act against the United States.” He claims that his going to Morris Island was under duress; that his leaving there was immediate; and that his action was grounded upon his faithful adherence to the United States.
We are inclined to think that under the Proclamation, April 15th, 1861, (12 Stat. L., p. 1258,) and within the meaning of the Abandoned or captured property act, the bombardment of Sumter was the beginning of the rebellion. It forms the dividing line between a supposed peaceful division of the territory of the republic and an actual warfare waged to compass its overthrow. Before hostilities began, many loyal persons, North as South, believed that a separation, reluctantly consented to, would be peacefully accomplished. When the reality of war came, there was no ground left for either hope or equivocation. The duty of the citizen then became as clear as imperative; men became eo instanti loyal or disloyal. As thunderstorms are commonly supposed to clear the atmosphere, so the reverberations of Fort Sumter’s guns cleared away hopes and doubts, and left every citizen either the friend or the enemy of the nation. Before that reality of war was reached, many stood in a locus penitentice. If from that event they did “ consistently adhere to the United States, and did give no aid or comfort to persons engaged in said rebellion,” Act 25th June, 1868, (15 Stat. L., p. 75, § 3,) their previous errors should not be deemed sufficient to attach to them the infamy of treason.
*632 The judgment of the court is, that, the claimant recover the net proceeds of eleven bales of sea-island cotton, captured at Charleston, at $178 48 a bale, being in the aggregate the sum of $1,963 28.